```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ANN BURTON,

                        Plaintiff,

        -against-                                                    MEMORANDUM AND ORDER

THE STATE EDUCATION DEPARTMENT                                       11-CV-4218 (SLT)(LB)
OFFICE OF PROFESSIONAL DISCIPLINE;
DONALD DAWSON, Chief Investigator;
GLENN FRANCIS, Senior Investigator; and
DAISY ROSARIO, Investigator,

                        Defendants.
----------------------------------------------------------------x
```

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ NOV 07 2011
BROOKLYN OFFICE

**TOWNES, United States District Judge:**

Plaintiff Ann Burton, a registered nurse, brings this *pro se* action against the New York State Education Department's Office of Professional Discipline ("the OPD") and three of its investigators, alleging that defendants 1) refused to disclose the source of, and other information regarding, an allegation of professional misconduct which had been made against plaintiff and 2) failed to address allegations which plaintiff had herself made against other nurses. Plaintiff's complaint principally seeks money damages, as well as unspecified "sanctions for defendants['] willful and unlawful misconduct." Plaintiff's request to proceed *in forma pauperis* is granted. However, for the reasons set forth below, the complaint is dismissed in its entirety.

## *BACKGROUND*

The following facts are drawn from plaintiff's complaint – the non-conclusory, factual allegations of which are assumed to be true for purposes of this opinion – and from the exhibits attached to the complaint. On November 9, 2010, defendant Glenn Francis, a Senior Investigator employed by the OPD, wrote plaintiff a letter informing her that the OPD was conducting an



investigation into allegations that plaintiff had engaged in "professional misconduct pertaining to [her] practice of Nursing." Complaint at 3, ¶ 3, and Ex. 1. Francis's letter invited plaintiff to come to the OPD's Bronx, New York, office for "an interview," but provided no details relating to the allegations of misconduct against plaintiff. *Id.*, Ex. 1.

Plaintiff responded to Francis's invitation by sending him a letter dated November 22, 2010. Plaintiff characterized Francis's letter as "vague correspondence" and represented that, in order for her to respond to his request, she needed Francis to "forward any and all documents maintained under [her] name" and in the file referenced in Francis's letter. *Id.*, Ex. 2. Francis "failed and refused" to do so. *Id.* at 3.

At some point prior to mid-May 2011, plaintiff filed her own complaint with the OPD against defendant Daisy Rosario, Francis and "15 of 26 barbaric nurses." *See id.* at 3, ¶ 6, and Ex. 3. Although OPD's Director of Investigations, defendant Donald Dawson, informed plaintiff by letter dated May 18, 2011, that he would contact her regarding her complaint in early June 2011, *id.*, Ex. 3, it is unclear whether he ever did so. Plaintiff's complaint alleges only that "Defendants failed and refused to address plaintiff[']s reports of negligent and barbaric nurses." *Id.* at 3, ¶ 6.

On July 19, 2011, plaintiff sent Dawson a letter referencing Francis's November 9, 2010, letter and accusing both Francis and Dawson of violating her "rights and NYSED OP Laws and regulations, not limited to but including § 6510, Public Health and Insurance Laws." *Id.* at Ex. 4. Plaintiff demanded to know the details of her alleged misconduct and the status of her "complaints" against Rosario, Francis, two other named individuals, and "the 15 Barbaric DVA nurses." *Id.* Plaintiff threatened to "commence legal action" unless she received the requested information within seven days. *Id.*

2

Plaintiff apparently did not receive the information she requested, for on August 29, 2011, she commenced this action. Although plaintiff's complaint specifically alleges that this Court has federal question jurisdiction, it does not cite to any federal statutes. Rather, the complaint alludes to state laws, alleging that "Defendants violated the Office of Professional Discipline's Laws, which govern the process of misconduct and investigations, including but not limited to Section 6510" and "failed to comply with Public Health laws, which govern public safety." *Id.* at 4, ¶¶ 8-9. While the complaint alleges that plaintiff "informed the defendants . . . that she was engaged in protected activity" and that "[d]efendants retaliated against plaintiff for exercise of her Constitutional Rights," *id.* at 2, ¶ 3, the complaint does not identify the "protected activity" or the "Constitutional Rights." In addition, although the complaint alleges that defendants treated plaintiff differently than "similarly situated nurses" in failing to disclose details regarding the allegations against her, *id.* at 3, ¶ 4, plaintiff does not name or describe the other nurses or allege what motivated the disparate treatment.

Plaintiff's complaint principally seeks damages, specifically requesting "monetary compensation in the sum of $100,000,000" and punitive damages in the same amount. Id. at 5, ¶ 2, and 6, ¶ 8. However, the complaint also requests that this Court impose "sanctions for defendants willful unlawful misconduct to the fullest extent of the law." *Id.* at 5, ¶ 1.

### DISCUSSION

#### Standard of Review

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to

3

raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

Title 28, Section 1915(e)(2)(B) of the United States Code, however, requires a district court to dismiss an action where it is satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). An action is frivolous as a matter of law when, *inter alia,* it is "based on an indisputably meritless legal theory"– that is, when it "lacks an arguable basis in law . . . , or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co..*, 141 F.3d 434, 473 (2d Cir. 1998). Thus, "[a] complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (*per curiam*) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)).

In addition, federal courts have an independent obligation to examine the basis of their jurisdiction. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### *Subject-Matter Jurisdiction*

Although plaintiff has checked a box to allege that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, none of the facts alleged in plaintiff's complaint

4

suggests a violation of "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Indeed, the complaint does not mention any federal statutes or specific provisions of the United States Constitution. Rather, the only laws alluded to in the complaint are state laws: "the Office of Professional Discipline's Laws, which govern the process of misconduct and investigations, including but not limited to Section 6510" [of the Public Health and Insurance Laws] and certain unspecified "Public Health laws, which govern public safety." Complaint at 4, ¶¶ 8-9..

To be sure, the complaint does allege that plaintiff "informed the defendants . . . that she was engaged in protected activity," and that "[d]efendants retaliated against plaintiff for exercise of her Constitutional Rights." Complaint at 2. The reference to "protected activity" and retaliation suggests that plaintiff, who has commenced several employment discrimination lawsuits in this Court over the last year, may be seeking to allege violations of the federal anti-retaliation provisions involved in those lawsuits. However, the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and the Americans with Disabilities Act make it unlawful for an employer to retaliate against an employee who has exercised his statutory right to complain about conduct that he considers discriminatory. See 29 U.S.C. § 623(d); 42 U.S.C. §§ 2000e–3(a), 12203(a). These anti-retaliation provisions do not apply in this case.

Similarly, the complaint's reference to "similarly situated nurses" suggests that plaintiff may be attempting to advance an equal protection claim. The Equal Protection Clause of the Fourteenth Amendment "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). "An equal

5

protection claim has two essential elements: (1) the plaintiff was treated differently than others similarly situated, and (2) this differential treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Lovell v. Comsewogue Sch. Dist.*, 214 F. Supp. 2d 319, 321–22 (E.D.N.Y. 2002) (citing *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir.2000)).

Plaintiff's complaint does not suggest a viable equal protection claim. First, plaintiff's complaint does not specifically identify the "similarly situated nurses," much less allege their race, religion, or other characteristics. Second, the allegations of disparate treatment are conclusory; the complaint alleges no facts to support the allegations that defendants treated plaintiff differently than other nurses. While the complaint alleges that OPD sought to interview plaintiff regarding allegations of misconduct leveled against her, and implies that the OPD has not yet taken disciplinary action against 15 nurses that plaintiff accused of barbarism, the complaint does not allege that the 15 "barbaric nurses" were never interviewed by defendants, or that plaintiff herself was disciplined.

Moreover, even if the complaint included factual allegations suggesting disparate treatment, there would be nothing to suggest that the allegedly disparate treatment was due to animus. This Court cannot infer racial animus or an intent to punish or inhibit plaintiff's exercise of her Constitutional rights from the facts that plaintiff is an African-American who has filed multiple lawsuits against others. *See, e.g., Traylor v. Steward*, No. 3:10-cv-639 (CFD), 2011 WL 4452197, at *7 (D.Conn. Sept. 26, 2011) (dismissing an equal protection claim where the plaintiff alleged that a police department made its decisions not to investigate his complaints

6

based on his race and interracial marriage, but alleged no "supporting or explanatory facts" concerning the racial motivation); *Brisbane v. Milano*, No. 3:08-cv-1328, 2010 WL 3000975, at *4 (D.Conn. July 27, 2010) (dismissing an equal protection claim because allegations that police did not investigate plaintiffs' robbery complaint because plaintiff was black were conclusory and unsupported by any facts).

### *Eleventh Amendment Immunity*

Even if plaintiff could establish a basis for subject-matter jurisdiction in this case, this Court could not grant the monetary damages or sanctions plaintiff seeks.[1] First, the Eleventh Amendment of the United States Constitution precludes this Court from awarding damages against a state or state employees acting in their official capacities. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The express language of this Amendment does not prohibit a state's own citizens from maintaining an action against the state in federal court, but the Supreme Court has "extended a State's protection from suit to suits brought by the State's own citizens." *Idaho v. Couer d'Alene Tribe of Idaho*, 521 U.S. 261, 268 (1997) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). A state can waive its Eleventh Amendment protection and allow a federal court to hear and decide a case commenced or prosecuted against it. *Id.* at 267. However, "[i]t is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is

---

[1] Although plaintiff does not specify the type of sanctions she seeks, this Court assumes that plaintiff is seeking monetary sanctions. This Court does not have the power to impose criminal sanctions in this civil action, or to discipline the employees of the State Education Department.

7

named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Moreover, since claims for money damages against state employees in their official capacities are effectively claims against the state itself, such claims are also barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

This Court takes judicial notice of the fact that the New York State Education Department is part of the University of the State of New York, http://usny.nysed.gov/about, which is headed by the Board of Regents: the entity which sets overall education policy for the State of New York, http://usny.nysed.gov/about/aboutusny.html. The State Education Department, the University of the State of New York, and the Board of Regents all enjoy immunity from suits for damages under the Eleventh Amendment. *United States v. City of Yonkers*, 96 F.3d 600, 619 (2d Cir. 1996) (holding that New York State Education Department and Board of Regents are immune under Eleventh Amendment); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (holding that the State University of New York is entitled to Eleventh Amendment immunity). There is nothing to suggest that any of these entities have waived their Eleventh Amendment immunity.

Moreover, defendants Dawson, Francis and Rosario, all of whom are employees of the State Education Department, are also immune from suits seeking damages from them in their official capacities. As "state actors," these individual defendants could be liable in their individual capacities in an action brought under 42 U.S.C. § 1983, but only if they deprived plaintiff of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). However, the complaint makes no allegations concerning what Rosario did or failed to do, and the actions and omissions allegedly

8

committed by Dawson and Francis did not violate the United States Constitution or any federal laws. Although this Court is well aware that a *pro se* complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the . . . complaint gives any indication that a valid claim might be stated," *Cuoco*, 222 F.3d at 112, *Gomez*, 171 F.3d at 795, nothing in plaintiff's complaint, even when it is read liberally, suggests that plaintiff could state a valid federal claim against these defendants.

## *CONCLUSION*

For the reasons stated above, this action is dismissed because this Court lacks subject-matter jurisdiction, because the complaint principally seeks monetary relief against defendants who are immune from such relief, and because the complaint fails to state a claim on which relief may be granted. *See* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

/SANDRA L. TOWNES'
United States District Judge

Dated: November 7, 2011
      Brooklyn, New York